**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA**

**Alexandria Division**

| | | |
|---|---|---|
| **William H. Harrison,** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **1:06cv1182 (TSE/TRJ)** |
| | ) | |
| **Federal Bureau of Prisons, et al.,** | ) | |
| **Defendants.** | ) | |

ORDER

William Henry Harrison, a federal inmate formerly housed in Virginia and proceeding pro

se, has filed a civil action pursuant to Bivens v. Six Unknown Named Agents of Fed. Bureau of

Narcotics, 403 U.S. 388 (1971) and various federal statutes, challenging an increase of three cents

in the long-distance telephone rate, from twenty cents per minute to twenty-three cents per minute,

at Federal Bureau of Prisons ("BOP") institutions.  He claims that the rate increase violated his (1)

First Amendment rights; (2) Fifth Amendment right to due process; (3) Fifth Amendment right to

equal protection; (4) the Administrative Procedure Act, 5 U.S.C. § 553; (5) the Federal Tort Claims

Act ("FTCA"), 28 U.S.C. §§ 1346, 2671 et seq.; and (6) the Freedom of Information Act ("FOIA"),

5 U.S.C. § 552.

In particular, plaintiff alleges that in late 2004, the long-distance telephone rate increased for

domestic calls only.  Unhappy about the increase, plaintiff submitted a complaint through the prison

grievance process arguing that the "unilateral and arbitrary" three cent increase violated his

constitutional rights.  In response to his complaints, prison officials informed plaintiff that the rate

change was a valid and reasonable increase in telephone charges.  On October 16, 2006, plaintiff,

dissatisfied with this response, filed the instant complaint.

**I.**

Well-settled principles furnish the legal lense through which plaintiff's claims must be viewed and assessed.  Plaintiff has submitted an application to proceed in forma pauperis, thus, his claims are reviewable pursuant to 28 U.S.C. § 1915A, which requires early screening and dismissal of claims that are frivolous, malicious, or fail to state a claim upon which relief can be granted. Whether a complaint states a claim upon which relief can be granted is determined by "the familiar standard for a motion to dismiss under Fed. R. Civ. P. 12(b)(6)."  Sumner v. Tucker, 9 F. Supp. 2d 641, 642 (E.D. Va. 1998).  Thus, the alleged facts are presumed true, and the complaint should be dismissed only when "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations."  Hishon v. King & Spalding, 467 U.S. 69, 73 (1984).

**II.**

A.  Constitutional Claims

　　　　1. First Amendment

Plaintiff claims defendants violated his First Amendment rights by increasing the long-distance telephone rates in federal correctional centers.  To be sure, inmates have First Amendment rights notwithstanding their incarceration, but these rights are necessarily circumscribed because of the legitimate penological and administrative interests of the prison system.  See Vester v. Rogers, 795 F.2d 1179, 1182 (4th Cir. 1986) ("Although a prisoner does not shed his first amendment rights at the prison portals, it is equally true that lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights.").  Thus, in the First Amendment context "prisoners have no *per se* constitutional right to use a telephone."  United States v. Footman, 215 F.3d 145, 155 (1st

Cir. 2000).[1]  Instead, "a prisoner's right to telephone access, if any, is subject to rational limitation

based upon legitimate security and administrative interests of the penal institution."  Arney v.

Simmons, 26 F. Supp. 2d 1288, 1293 (D. Kan. 1998) (citing Washington v. Reno, 35 F.3d 1093,

1100 (6th Cir. 1994)).  To that end, "the exact nature of the telephone service to be provided to

inmates is generally to be determined by prison administrators." Evjene v. Hawsey, 1994 U.S. Dist.

LEXIS 14526, at *7-8 (D. Ala. 1994).  And, "decisions made by prison officials regarding prison

administration are entitled to significant deference." Shue v. Herring, 2006 U.S. Dist. LEXIS 73400,

at *17-18 (M.D.N.C. 2006) (citing Bell v. Wolfish, 441 U.S. 520, 547 (1979)).  As such, "absent

extraordinary circumstances, the courts may not second-guess prison administrators, nor should

federal courts immerse themselves in the management of state prisons."  Id.

These principles make pellucidly clear that "prisoners are [not] entitled to a specific rate for

their telephone calls." Johnson v. California, 207 F.3d 650, 656 (9th Cir. 2000).  Thus, by no stretch

of the imagination does a three cent increase in the telephone rate implicate the First Amendment.[2]

---

[1]See Valdez v. Rosenbaum, 302 F.3d 1039 (9th Cir. 2002) (holding that there is no First
Amendment right to telephone access, instead there is a First Amendment right to communicate with
persons outside of prison walls, and "[u]se of a telephone provides a *means* of exercising this right);
Washington v. Reno, 35 F.3d 1093, 1100 (6th Cir. 1994) (holding that "an inmate has no right to
unlimited telephone use").

[2]Other courts have similarly dismissed First Amendment claims where plaintiff challenged the
telephone rate charged by a correctional facility.  See e.g., Orr v. Dawson, 2006 U.S. Dist. LEXIS
68943, at *23-24 (D. Idaho 2006) (dismissing plaintiff's claim that defendants engaged in price
gouging on the telephone service provided to inmates because "there is no authority for the
proposition that prisoners are entitled to a specific rate for their telephonic calls") (citing Johnson,
207 F.3d at 656, overruled on other grounds, 534 U.S. 499); Woods v. Carey, 2005 U.S. Dist. LEXIS
32927, at *4-5 (E.D. Cal. 2005) (dismissing plaintiff's claim that prison conspired with telephone
company to overcharge prisoners for long distance telephone calls) (citing Johnson, 207 F.3d at 656);
Fulton v. MCI Worldcom, Inc., 2006 U.S. Dist. LEXIS 32037, at *5 (E.D. Cal. 2006)
(recommending dismissal because the "[t]he First Amendment does not require that prisoners have
their choice of telephone services or that they be given a specified rate for their telephone calls").

To hold otherwise would be to trivialize, and therefore undermine, a fundamental right. Accordingly, where, as here, plaintiff complains solely of a three cent increase in the telephone rate charged, dismissal is appropriate.

2. Due Process

Liberally construed, plaintiff argues that his Fifth Amendment rights have been violated because monies were removed from his prison inmate account to satisfy his telephone charges, without due process. To state a claim for a procedural due process violation, plaintiff must first allege a harm to a protectible interest in "life, liberty, or property." Hewitt v. Helms, 459 U.S. 460, 466 (1983). Plaintiff has done so here because prisoners have a property interest in the funds held in their prison accounts. Waters v. Bass, 304 F. Supp. 2d 802, 811 (E.D. Va. 2004). Therefore, the questions is whether the BOP provided constitutionally adequate procedures when it withdrew money from plaintiff's prison trust account to satisfy his telephone usage charges.

In answering this question, it is important to note that "due process is flexible and calls for such procedural protections as the particular situation demands in order to minimize the risk of error." Id. In certain circumstances, due process will require pre-deprivation notice and a hearing, but where it is impractical to provide a meaningful hearing prior to an alleged deprivation, due process is satisfied when some meaningful post-deprivation procedure exists to assess the propriety of the state's action. Id.; Parratt v. Taylor, 451 U.S. 527, 538 (1981). Thus, in Tillman v. Lebanon, 221 F.3d 410 (3d Cir. 2000), the Third Circuit held it was impractical to require prisons to provide pre-deprivation proceedings where the prison withdrew ten dollars per day from a prisoner's account

_____

Accord Smith v. Bradley, 1995 U.S. App. LEXIS 9759, at *9 (6th Cir. 1995) (holding that "merely replacing a collect-call telephone system with a direct-dial system does not alone implicate inmates' First Amendment rights").

to pay for the costs of room and board because the withdrawal  involved "routine matters of accounting," with a low risk of error.  Id. at 421-22.  Furthermore, Tillman held that due process is fully satisfied where post-deprivation procedures are available through the normal prison grievance system.  Id.   Likewise, in Waters, the court held that due process was satisfied where the prison grievance process was available to evaluate plaintiff's challenge to the withdrawal from his account of a daily room and board fee of one dollar.  304 F. Supp. 2d at 811.  Thus, where, as here, the correctional facility routinely collects fees, or otherwise performs ministerial accounting tasks, procedural due process is satisfied by the availability of a post-deprivation proceeding, namely, the normal prison grievance process.  Thus, plaintiff's procedural due process rights have not been violated.[3]

   3. Equal Protection

Next, plaintiff argues that the increased telephone rate, which applies only to domestic long-distance telephone calls, but not to local or foreign telephone calls, violates his equal protection rights under the Fifth Amendment.  The Equal Protection Clause protects against arbitrary classifications by state actors.  See U.S. Const. amend. XIV § 1.  Nevertheless, a classification need only be rationally related to a legitimate state interest "unless a classification trammels fundamental personal rights or is drawn upon inherently suspect distinctions such as race, religion or alienage . . . ."  City of New Orleans v. Dukes, 427 U.S. 297, 303 (1976).  While the Equal Protection Clause

---

   [3]In addition, plaintiff alleges defendants violated his "administrative due process rights" in failing to respond to all of the claims and issues raised in his administrative grievances.  This claim fails at the threshold because prisoners have no constitutional right to participate in prison grievance procedures.  See Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994) (dismissing plaintiff's claim that he was retaliated against when he was barred access to the grievance process because "the Constitution creates no entitlement to grievance procedures or access to any such procedure").

protects prisoners from discriminatory treatment by prison officials, prisoners are not considered a suspect class.  Roller v. Gunn, 107 F.3d 227, 233 (4th Cir. 1997). Therefore, prison regulations that classify prisoners need only meet a reasonableness test.  See Washington v. Harper, 494 U.S. 210, 223 (1990); Waters, 304 F. Supp. 2d at 810 n.15.  Accordingly, a plaintiff must show "(i) that he has been treated differently from others with whom he is similarly situated and (ii) that the unequal treatment was a result of purposeful discrimination."  Waters, 304 F. Supp. 2d at 810.

Plaintiff's complaint fails to allege facts sufficient to demonstrate either showing.  Plaintiff alleges that the telephone rate increase applies to long-distance calls in the United States, but not to local calls or foreign calls.  While this may indicate that the telephone calls are classified differently, there is no indication that plaintiff has been treated differently from other inmates seeking to make domestic long-distance phone calls.  See id. (dismissing equal protection claim where all inmates had to pay the daily room and board fee).  Moreover, nothing in plaintiff's complaint suggests that prison officials imposed differing telephone rates for domestic and international long-distance because of purposeful discrimination.  Thus, claim 3 must be dismissed.

B.  Administrative Procedure Act

Plaintiff claims that the long-distance telephone rate increase violates the APA because the BOP did not promulgate the rate after complying with the notice and comment requirements of 5 U.S.C. § 553.  While the Fourth Circuit has not addressed the issue, numerous circuits have either held or assumed that the BOP is an "agency" subject to the APA's rulemaking requirements.  See White v. Henman, 977 F.2d 292, 293 (7th Cir. 1992);   Ramer v. Saxbe, 522 F.2d 695, 697 (D.C. Cir 1975); Venegas v. Henman, 126 F.3d 760, 763 (5th Cir. 1997).  See also Cross v. Gutierrez, 2005 U.S. Dist. LEXIS 43188, at *6-7 (N.D.W.V. 2005).  Thus, assuming, without deciding, that

the BOP is an agency subject to the APA, the question is whether the APA provides for judicial

review of the BOP's rate increase.

In general, the APA provides for judicial review of agency action. *See* 5 U.S.C. § 702.

Judicial review is unavailable, however, if (1) prohibited by statute or (2) agency action is

"committed to agency discretion by law." 5 U.S.C. § 701(a). This second exception, applicable

here, requires dismissal when there is "no law to apply." Lunney v. United States, 319 F.3d 550,

558 (2d Cir. 2003) (quoting Webster v. Doe, 486 U.S. 592, 600 (1988); Citizens to Preserve Overton

Park v. Volpe, 401 U.S. 402, 410 (1971)). In this case, Congress has provided that the BOP shall

"(1) have charge of the management and regulation of all Federal penal and correctional institutions;

[and] (2) provide suitable quarters and provide for the safekeeping, care, and subsistence of all

persons charged or convicted of offenses against the United States . . .". 18 U.S.C. § 4042.[4] This

statute addresses only the general responsibilities of the BOP; thus, "[t]he absence of specific

guidelines of appropriate conduct by BOP officials in administering these duties [] leaves judgment

or choice to BOP officials." *Scrima v. Hasty*, 1998 U.S. Dist. LEXIS 15050, at *8 (S.D.N.Y. 1998).

Indeed, the total absence of specific guidelines indicates that the BOP has "broad unreviewable

discretion" in fulfilling its responsibilities. See Wolfish v. Levi, 573 F.2d 118, 125 (2d Cir. 1978),

rev'd on other grounds, Bell v. Wolfish, 441 U.S. 520 (1979); Crooker v. Morris, 1996 U.S. Dist.

LEXIS 15833, at *24-25 (D. N.J. 1996) ("[I]t is well-settled that the BOP generally has wide

discretion to implement the [] provisions in § 4042(a)).[5] Therefore, the APA precludes judicial

---

[4]Pursuant to this statutory authority, the BOP entrusted the Chief of the Trust Fund Branch with
the responsibility to determine telephone costs. BOP Program Statement 4500.04.

[5]See also Moody v. Daggett, 429 U.S. 78, 88 n.9 (1976) (finding that federal prison officials have
"full discretion" to control prisoner classification and determine eligibility for rehabilitative

review where, as here, the BOP has broad discretion to provide "suitable" quarters and care for inmates, which includes the provision of telephone services.  See Wolfish, 573 F.3d at 125 (holding that the APA precludes judicial review of the BOP's discretionary decision to reduce  the number of telephone calls permitted to prisoners).   Accordingly, claim 4 must be dismissed.

C.  Federal Tort Claims Act

In claim 5, plaintiff alleges defendants violated the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346, 2671 et seq., by increasing the long-distance telephone rate in federal prisons.  The FTCA provides that the United State's sovereign immunity is waived for suits resulting from injuries "caused by the negligent or wrongful act or omission of any employee of the Government . . . under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b). Importantly, Congress has limited the reach of the FTCA by providing that § 1346(b) does not apply to "any claims based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation . . . or based upon the exercise or performance . . . [of] a discretionary function or duty . . ." 18 U.S.C. § 2680(a).  The purpose of this discretionary function exception is "to prevent judicial second-guessing of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort."  United

---

programs"); Caudle v. United States, 1995 U.S. App. LEXIS 34701, at *1 (7th Cir. 1995) (holding that the manner in which the BOP fulfills its duty under § 4042(a)(2) is discretion); Walker v. Hughes, 558 F.2d 1247, 1252 (6th Cir. 1977) ("Federal statutory law gives federal prison officials full discretion in the treatment of prisoners and does not restrict the authority of prison officials over the inmates as to placement in more restrictive living status, transfer to other prisons, subjection to significant and adverse effects on parole dates, and deprivation of privileges."); Ramey v. Hawk, 730 F. Supp. 1366, 1372 (E.D.N.C. 1989) ("When a mode or method chosen by the BOP to effectuate a policy is challenged, the court generally defers to the judgment of the BOP.").

States v. Gaubert, 499 U.S. 315, 323 (1991).

Given these settled principles, it is quite clear that plaintiff has failed to state a claim under

the FTCA.  First, and most importantly, plaintiff has not alleged that he was the victim of any tort

under the governing laws of the Commonwealth of Virginia.  Because plaintiff has failed to allege

a cognizable state law tort claim, his FTCA claim must fail.  See FDIC v. Meyer, 510 U.S. 471, 477-

78 (1994) (holding that to state a claim under the FTCA, plaintiff must allege a state law tort claim,

not a deprivation of a federal constitutional right).  Moreover, even assuming plaintiff had properly

alleged a state law tort claim, plaintiff's claim is nonetheless barred by the discretionary function

exception.  This is so because, as explained above, the BOP's provision of telephone services is a

matter committed to its discretion that will not be second-guessed through an FTCA claim.  Thus,

claim 5 must be dismissed.

### III.

Finally, plaintiff alleges that the FOIA Section of the BOP has failed to respond to his August

2004 request for records.  The Freedom of Information Act confers jurisdiction over a complaint on

"the district court of the United States in the district in which the complainant resides, or has his

principal place of business, or in which the agency records are situated, or in the District of

Columbia." 5 U.S.C. § 552(a)(4)(B).  It does not appear that jurisdiction lies in this district because

plaintiff states he is currently incarcerated in the Middle District of Pennsylvania and does not allege

where the agency records sought are located in this district.  Therefore, this remaining claim will be

transferred to the United States District Court for the Middle District of Pennsylvania.

Accordingly, it is hereby

ORDERED that claims 1, 2, 3, 4, and 5 be DISMISSED WITH PREJUDICE for failure to state a claim, pursuant to 28 U.S.C. § 1915A(b)(1); and it is further

ORDERED that plaintiff's request to proceed in forma pauperis be and is GRANTED; and it is further

ORDERED that the remaining claim in this action is TRANSFERRED to the United States District Court for the Middle District of Pennsylvania.  The Clerk of this Court is directed to transfer all pleadings and pending motions filed in this case and a copy of the docket sheet to the Clerk of the United States District Court for the Middle District of Pennsylvania; and it is further

ORDERED that plaintiff direct all future pleadings in this case to the Clerk's Office for the United States District Court for the Middle District of Pennsylvania.

The Clerk is directed to send a copy of this Order to plaintiff.

Entered this 14th day of December 2006.

_____/s/_____
United States District Judge
Alexandria, Virginia